**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KIERA CARTER, *on behalf of herself and others similarly situated*,<br><br>　　　　　　　　　　　　　　　*Plaintiff*,<br><br>　　　-against-<br><br>FRESH DINING CONCEPTS LLC,<br><br>　　　　　　　　　　　　　　　*Defendant*. | Case No**.** 23-cv-10713<br><br>**RULE 23 CLASS ACTION**<br>**<u>COMPLAINT</u>**<br><br>**Jury Trial Demanded** |

Plaintiff KIERA CARTER ("Plaintiff"), individually and on behalf of all other similarly situated persons employed by Defendant FRESH DINING CONCEPTS LLC ("Defendant"), as class representative, upon personal knowledge as to herself and upon information and belief as to other matters, alleges as follows:

1.　　　Plaintiff others who worked for Defendant at their franchise locations of Auntie Anne's, Cinnabon, combined Auntie Anne's & Cinnabon locations, Jamba Juice, and Carvel stores throughout New York State: were denied required uniform maintenance, see 12 NYCRR 142-2.5(c), and were subjected to numerous and repeated violations of the New York City Fair Workweek Law, Title 20, Chapter 12 of the New York City Administrative Code ("Fair Workweek Law").

2.　　　Plaintiff and a proposed sub class of similarly situated persons worked for Defendant at their franchise locations of Auntie Anne's, Cinnabon, combined Auntie Anne's & Cinnabon locations, Jamba Juice, and Carvel stores throughout New York State, and worked shifts or split-shifts covering a span of more than 10 hours in a workday, and were not paid the required "spread of hours" premium for each such workday.

3.　　　Plaintiff and a proposed sub-class of similarly situated persons worked for

1

Defendant at their franchise locations of Auntie Anne's, Cinnabon, combined Auntie Anne's & Cinnabon locations, Jamba Juice, and Carvel stores in New York City, Defendant also failed to pay Plaintiff and the proposed class statutorily required $100 premium for working clopenings in violation of New York City's Fair Workweek Law.

4.      Of note, New York City passed the Fair Workweek Law to require fast food employers to provide their employees with predictable schedules with advance notice, sufficient time between shifts, and pathways to full-time employment. Defendant has violated the Fair Workweek Law by failing to provide predictable schedules with at least 14-days' notice, changing employees' schedules at the last minute, requiring employees work clopenings without written consent and without paying the premium, and failing to offer new shifts to current employees before hiring new employees. See N.Y.C. Admin. Code §§ 20-1221-22; 20-1231; 20-1241.

5.      Plaintiff and a proposed class of similarly situated persons worked for Defendant at their franchise locations of Auntie Anne's, Cinnabon, combined Auntie Anne's & Cinnabon locations, Jamba Juice, and Carvel stores throughout New York State, performing entirely manual labor, while being paid biweekly, in direct contravention of NYLL §191 and entitling them to liquidated damages pursuant to NYLL §198.

**PARTIES**

6.      Plaintiff is an adult, over 18 years of age, and is a citizen of the State of New York, residing in Bronx County.

7.      Throughout the relevant time period, Plaintiff performed work for Defendant at a combined Cinnabon and Auntie Anne's store location located at 2857 Third Avenue, Bronx, New York, 10455.

2

8.     Defendant FRESH DINING CONCEPTS LLC, is a foreign limited partnership organized and existing under the laws of the State of Delaware with its headquarters located in the State of Florida.

9.     According to the New York Department of State Records entry for Defendant FRESH DINING CONCEPTS LLC, maintains a service of process address in the care of C/O Corporation Service Company at 80 State Street, Albany, New York, 12207.

10.     According to Defendant's website, it operates 165 Auntie Anne's, Cinnabon, Jamba Juice, and Carvel locations across multiple states and had approximately $145 million in annual revenue in 2022.

11.     Defendant's website also included an August 2022 article listing Defendant as one of the 200 largest franchise owners in the country and a November 4, 2021 article discussing Defendant's plans to open ten co-branded Auntie Anne's and Cinnabon locations within New York City alone.

12.     Since April of 2021, Fresh Dining Concepts, under the leadership of company CEO Luis San Miguel, has grown from 50 locations to today's 160+ in more than 15 states across the country.

13.     In late-2021, it inked a deal to develop 10 co-branded Auntie Anne's and Cinnabon locations in the five New York City boroughs over the next four years.

14.     Fresh Dining Concepts is one of the largest Focus Brands franchisee groups in the country.

15.     Defendant had the authority to hire and fire the employees of the Defendant, including Plaintiff, and set the rate of pay, hours of employment, maintain employment records and other terms and conditions of their employment.

## JURISDICTION AND VENUE

16.    This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendant in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiff and the members of the proposed class are citizens of states different from that of Defendant.

17.    This court also has diversity jurisdiction over this action pursuant to 28 U.S.C.A. § 1332(a)(1) and (c)(1). There is complete diversity of citizenship between the opposing parties since the Plaintiff resides in New York State and is a citizen of that state, while Defendant is a citizen of Delaware with its headquarters in Florida.

18.    There are over 200 members in the proposed class.

19.    Defendant is subject to personal jurisdiction in New York as they do business in New York.

20.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant conducts business in this District.

21.    Together with the filing of this action, Plaintiff has served notice of this action and a copy of the complaint to be filed upon the New York City Department of Consumer and Worker Protections, Office of Labor Standards Division.

## FACTS

22.    At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of NYLL §190(2), 12 NYCRR 146-3.2, and NYC Admin Code, Ch. 12, § 20-1201.

23.    At all relevant times, Plaintiff was a "fast food employee" within the meaning of

§146-3.4 of the Hospitality Industry Wage Order.

24.     At all relevant times, Defendant was a "fast food establishment" within the meaning of  §146-3.13 of the Hospitality Industry Wage Order.

25.     Defendant was and is a covered "employer" within the meaning of the NYLL§190(3).

26.     The following facts are pleaded according to Plaintiff's best recollection.  Plaintiff reserves the right to amend these pleadings after receiving discovery from Defendant, including employment records that Defendant is required to maintain for a period of six years pursuant to the NYCRR.

27.     Upon information and belief, the below facts are consistent among Plaintiff and similarly situated members of the Proposed Class.

28.     Plaintiff began her employment with Defendant on or about May 10, 2023, and worked for the Defendant until the termination of her employment on or about July 24, 2023.

29.     Plaintiff obtained the job by responding to an Indeed ad, after which she was scheduled for an interview at a Cinnabon located at the Co-Op City Mall, which is located on Bay Plaza, Bronx, NY.

30.     Plaintiff was hired by the Defendant to work full-time as shift leader at one of their combined Auntie Anne's & Cinnabon's locations at 2857 Third Avenue, Bronx, New York, 10455.

31.     Defendant uses its centralized administrative office to solicit employees for work and screen them for hiring, which is what happened in the case of Plaintiff.

32.     At all times during Plaintiff's employment, Defendant paid Plaintiff the hourly minimum wage rate of $15 per hour via direct deposit on a bi-weekly basis.

33.     Plaintiff's primary job duties consisted of preparing food, including baking pretzels and cinnamon buns, setting up workstation with all needed ingredients, preparing ingredients to use in cooking, daily cleaning, and maintenance of the kitchen, taking orders from and serving customers, collecting payments, and closing out the register.

34.     At all relevant times, while performing job-related duties, Defendant required Plaintiff to wear a uniform consisting of navy blue shirt with Defendant's logo, khaki pants and plain black shoes.  The only item that Defendant provided to Plaintiff was exactly one (1) shirt.

35.     Plaintiff regularly worked 4 days per week, typically 10-12 hours per day.

36.     Plaintiff's uniform was issued by Defendant for the expressed benefit of Defendant, and it was a condition of her employment to wear them during each shift.

37.     Defendant did not launder Plaintiff's required uniform, nor did Defendant offer to launder it.

38.     Defendant never paid Plaintiff any uniform maintenance pays or reimbursement for the cost of maintaining her uniform.

39.     Plaintiff had to pay for the cost of maintaining her uniform, including laundering her uniform, out of her own pocket.

40.     Defendant, at the time of hire and during the course of employment, failed to compensate Plaintiff with an extra hour of pay, in addition to pay for the actual hours worked, when Plaintiff workday exceeded 10 hours from the beginning of their first shift to the end of their last.

41.     Defendant scheduled Plaintiff to work four days per week, for an average of ten hours per day.  On some days she worked under ten hours, but on other days, Defendants required her to work over ten hours.

42.     For example, during the week of June 4 to June 10, 2023, according to Defendant's own payroll and timekeeping records retained by Plaintiff, Plaintiff worked three shifts in excess of ten hours.  She worked 14 hours and 13 mins on June 5, 11 hours and 30 mins on June 6th, and 10 hours and 59 mins on June 7th.  Despite working three shifts in excess of ten hours in just this one week, Plaintiff's bi-weekly pay stub dated 6/16/23, which covered the two week period from May 28, 2023 to June 10, 2023, does not include any spread of hours pay, even though Plaintiff should have received a minimum of $45 in spread of hours pay for the three shifts she worked in excess of ten hours.

43.     On more than one occasion, Defendant required Plaintiff worked a clopening shift.  Plaintiff was required to close the restaurant down at 11:30 pm, and then return to work to open the restaurant the following morning at 8 am.  The difference in hours between closing and opening is less than 11 hours, which qualifies as a clopening under New York City's Fair Workweek law and resulted in Plaintiff getting less than 6 hours of sleep.

44.     Plaintiff received her two-week schedule just one day in advance.  Her store manager would create a schedule on a Saturday to take effect the very next day on Sunday.

45.     Plaintiff's schedule frequently changed in terms of days off, where sometimes Plaintiff had weekdays as her off-days and other occasions when weekends were her off-days.

46.     Approximately once per week, Plaintiff had to stay one or more hours past her scheduled end time because she needed to cover for another employee who was late or had called in that they would not be coming.

47.     During her employment, over twenty-five percent of Plaintiff's duties were physical tasks.

48.     Based on Plaintiff's observations, there were approximately 18-19 employees

based at her location.

49.     Plaintiff was aware that approximately four workers were allowed to transfer from the Third Avenue location where she worked in the Bronx to Defendant's location in or near the Macy's department store located at 151 West 34th Street, New York, New York, 10001.

50.     Among Plaintiff's coworkers and based on conversations with district manager Shawn Budhoo and store manager Javier (last name unknown),Budhoo had district manager responsibilities with at least seven of Defendant's locations including the Bronx and Macy's locations as well as locations at: 200 Baychester Ave., Space #K9, Bronx, New York, 10475, 688 6th Avenue, New York, New York, 10011, and 800 Broadway, Brooklyn, New York 11206.

51.     Plaintiff was also aware that Budhoo freely transferred employees to and from his Third Avenue location in the Bronx to the 200 Baychester Ave. location in the Bay Plaza shopping area in the Bronx.

52.     Throughout Plaintiff's employment at the Third Avenue location where she worked, she raised concerns about her physical safety.  On one occasion in or around June 2023, a female coworker threatened Plaintiff with violence and told her there was a group of women waiting to "jump her" and physically assault her around the corner.  Plaintiff raised this issue to her manager Budhoo, who just threw up his hands and said, "If something happens, one of you will be fired."

53.     In June 2023, Plaintiff observed a violent incident at the Third Avenue store when a customer requested a sample cinnamon bun, but was told by manager Budhoo that he could not have one.  The customer appeared to take offense at the way in which he was told he could not have a free sample.

54.     The customer abruptly left the store, then came back and asked for a free sample

8

of pretzels and was again told no by Budhoo.  The customer then displayed a knife in a threatening manner, and went behind the counter to take pretzels without paying.  Budhoo did not call the police or otherwise report the incident, leaving Plaintiff and her coworkers fearing for their safety.

55.    From around May 26, 2023 to around July 23, 2023, Plaintiff observed multiple other customers steal pretzels and witnessed at least four violent altercations involving customers and employees.  In none of these altercations did Defendant's managers call the police or otherwise appropriately address or defuse the situation.

56.    After multiple threatening and violent incidents and Plaintiff repeatedly raising safety concerns, Plaintiff did observe for the first time on Friday, July 21, 2023 that Defendant had hired a security guard to work at the Third Avenue location.

57.    Three days after Defendant finally hired a security guard after Plaintiff repeatedly complained about safety issues at the store, Defendant terminated Plaintiff's employment without warning or explanation on Monday July 24, 2023 after she assisted her manager in closing down the location.

58.    Upon information and belief, within each Auntie Anne's & Cinnabon location, there are at least four types of positions: Cashier, Pre Baker, Shift Leader, Shift Supervisor, and Store Manager.

59.    Prep Bakers open the store at the beginning of the shifts, make dough, and bake pretzels and cinnamon buns.

60.    Cashiers prep all food items, restock food, clean counters and registers, take customer orders, and operate cash registers.

61.    Shift Leaders generally assist with the same duties in paragraphs 51 and 52 as

well as performing training tasks acting as the most senior member of the line staff.

62.     Shift Supervisors have supervision and scheduling duties over the bakers, cashiers, and shift leads also fill in performing physical tasks as needed.

63.     Store managers are supervisory employees, who perform administrative tasks, scheduling, and supervision, and are responsible for the overall operation of each store location.

**Acute Injuries in Fact Sustained by Plaintiff as a result of Defendant's Conduct**

64.     Plaintiff and other similarly situated Manual Workers employed by Defendant suffered actual and acute injuries as a result of Defendant's failure to pay weekly wages.  The timely payment of earned wages were and are crucial to Plaintiff's ability to pay day to day and monthly expenses, especially due to New York's high cost of living.

65.     Defendant's late wage payments also deprived Plaintiff and other similarly situated Manual Workers of the time value of their earned money, resulting in tangible financial loss calculated as interest and in other amounts; and loss in the form of the negative impact on their ability to save, invest, and plan for the future.  Defendant reaped huge profits from its customers as a direct result of its Manual Workers' labor, taking in millions in revenue, while unlawfully withholding from and paying late its employees who are least able to weather these unjust delays.

## RULE 23 CLASS ACTION ALLEGATIONS

66.     The Proposed Class is defined as:

> All persons employed in a non-exempt position by Defendant in New York at any time six years prior to the filling of this Complaint through the entry of judgment in this case.

67.     In addition, Plaintiff seeks to represent a proposed Subclass as follows:

> All persons employed in a non-exempt position by Defendant in New York City at any time two years prior to the filling of this Complaint through the entry of

judgment in this case.

68.     The members of the Proposed Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

69.     There are more than 200 class members and Plaintiffs' claims are typical of those other members, in that anyone would seek the same discovery, make the same legal arguments, and rely on the same factual record for summary judgment.

70.     Plaintiffs and the Proposed Class have all been injured in that they have been: (i) not paid required uniform maintenance pay; (ii) had to incur out-of-pocket work expenses that brought their take home pay below minimum wage; (iii) not provided complete and accurate wage notices and statements; (iv) were required to work shifts in excess of ten hours without receiving spread of hours pay; and (v) were Manual Workers who were paid on an untimely basis.

71.      Defendants' corporate-wide policies and practices affected every non-exempt employee who worked in New York in the same way.

72.     Plaintiffs are able to fairly and adequately protect the interests of the Proposed Class and have no interests antagonistic to it.

73.     Indeed, Plaintiffs have advocated for employee rights, and fairness and equity in the workplace, including requesting higher pay, weekly payments, and reimbursement for travel expenses.

74.     Plaintiffs are represented by attorneys who are experienced and competent to bring this action.

75.     A class action is superior to other available methods for the fair and efficient

adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

76.     Common questions of law and fact exist as to the Proposed Class that predominate over any questions only affecting Plaintiffs and/or each member of the New York Class individually and include, but are not limited to, the following:

a.   Whether Defendant employed Plaintiff and the class members within the meaning of the New York Labor Law;

b.   What is Defendant's policy with respect to what employees wear to work?

c.   What was the hourly rate paid by Defendant to employees?

d.   Did the employee work a shift or split-shift covering more than 10 hours in a workday?

e.   Were employees paid spread of hours premium?

f.   Whether Defendant failed to reimburse the cost of maintaining laundering, or purchasing a required uniform.

g.   How many hours per week did the employee work for purposes of determining entitlement to the "low", "middle" or "high" rate for uniform maintenance pay as per 12 NYCRR § 146-1.7?

h.   Was the employee provided with a sufficient number of uniforms to cover the number of shifts that they worked each week?

i.   Whether Defendant laundered or offered to launder the required uniforms;

j.   What items of information were indicated on employee wage notice and wage statements?

k.   When did restaurant employees receive their schedule?

l.   What changes were made to schedules and how soon in advance?

m.  Did the restaurant provide a written copy of employees' regular schedule including the number of hours an employee can expect to work per week for the duration of the employee's employment and the expected days, times and locations of those hours?

n.   Did the employee work clopening shifts?

o.   What are the job duties performed by Defendant's employees?

p.   Does the employee spend at least 25% of the workday engaged in physical tasks?

q.   What is the frequency of pay of Defendant's employees?

### **FIRST CAUSE OF ACTION**

***Violation of the New York Labor Law – Unpaid Spread of Hours***

77.    Defendant employed Plaintiff and the proposed class members within the meaning of New York Labor Law §§2 and 651.

78.     New York Labor Law provides that employers are required to pay a "spread of hours" of one (1) additional hour's pay at the basic minimum hourly wage rate for each day where the spread of hours in an employee's workday exceeds ten (10) hours. New York Labor Law § 146-1.6(a).

79.     Upon information and belief, and based upon Defendant's payroll and timekeeping records retained by Plaintiff, Defendant regularly required Plaintiff to work shifts in

excess of ten hours.

80.     At all times relevant to this action, Plaintiff worked a spread of hours of more than ten (10) hours on multiple days, and Defendant failed to pay Plaintiff and the putative class members an additional hour of pay for each such day in violation of the New York Minimum Wage Act, New York Labor Law § 650 et seq., including 12 NYCRR § 142.

81.     Defendant knowingly and willfully operated their business with a policy of not paying Plaintiff and the proposed class "spread of hours" for each day that they work a shift in excess of ten (10) hours, in direct violation of the New York State Department of Labor Regulations.

82.     Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant, unpaid spread of hours compensation, maximum liquidated damages, prejudgment interest, and attorneys' fees and costs of the action, pursuant to NYLL § 663(1).

## SECOND CAUSE OF ACTION

### *Violation of the New York Labor Law – Uniform Maintenance Pay*

83.     Plaintiff alleges and re-alleges all of the other paragraphs contained herein.

84.     Defendant required Plaintiff and the Class to wear a uniform consisting of a shirt emblazoned with Defendant's logo.

85.     Plaintiff and the Class's uniforms were issued by Defendant for the expressed benefit of Defendant and it was a condition of their employment to wear them during each shift.

86.     Defendant never paid Plaintiff any uniform maintenance pay or reimbursement for the cost of maintaining uniforms.

87.     Defendant failed to supply sufficient articles of uniform clothing consistent with the average number of days per week worked by Plaintiff and the Class.

88.     Defendant did not, and did not offer, to, wash, iron, dry clean, alter, repair, or perform other maintenance necessary for Plaintiff's or the Class' required uniform.

89.     Defendant did not maintain Plaintiff's or the Class' required uniform under the meaning of the New York Labor Law.

90.     Defendant did not, and did not offer to, launder the required uniforms free of charge and with reasonable frequency, and did not inform Plaintiff or the Class in writing of such service.

91.     Plaintiff and the Class's uniforms were issued by Defendant for the express benefit of Defendant and it was a condition of their employment to wear them during each shift.

92.     Defendant never paid any uniform maintenance pay or reimbursement for the cost of maintaining uniforms.

93.     Plaintiff and the Class routinely spent time off-the-clock and money to clean and maintain their uniforms consistent with the uniform appearance standards Defendant requires.

94.     Defendant never paid Plaintiff or the Class any uniform maintenance pay or reimbursement for the cost of maintaining uniforms nor did they provide them in sufficient number to cover all workshifts of in accordance with 12 N.Y.C.R.R. § 146-1.7.

95.     Defendant's conduct is in violation of Article 19 of the New York Labor Law and its supporting regulations, including 12 N.Y.C.R.R. Part 146 the Minimum Wage Order.

### **THIRD CAUSE OF ACTION**

#### *Violations of New York City Fair Workweek Law-Clopenings*

96.     Pursuant to the Fair Workweek Law, fast food employers cannot schedule employees to work two shifts over two days with less than 11 hours between shifts when the first shift ends the previous calendar day or spans two (2) calendar days unless (a) the employee has

the opportunity to decline to work the clopening (b) the employee consents and puts consents in writing; and  (c) the employer pays the worker a $100 premium per "clopening" worked.

97.      On several occasions, Defendant scheduled Plaintiff to work two shifts over two days with less than 11 hours between shifts. For example, often the Plaintiff was scheduled to close down the store at 11:30 pm and then arrive the following morning to open up the store at 8:00 am.  Therefore, Plaintiff worked a "clopening" because her the start of her morning shift began less than 11 hours after the end of the evening shift the night before.

98.      Upon information and belief, Defendant knowingly and willfully disregarded the provisions of the NYC's Fair Workweek Law as evidenced by Defendant's failure to provide the Plaintiff with the opportunity to decline to work the clopening, failure to obtain Plaintiff's written consent to work the shift and failure to pay the Plaintiff a $100 premium each time he worked the clopening shift.

99.      In accordance with the Fair Workweek Law, §7-623(a), a fast-food employer's failure to pay a fast-food employee the required $100 premium for working a clopening and a fast-food employer's failure to obtain a fast-food employee's written consent to work a clopening shall each constitute a separate violation of §20-1231 of the Fair Workweek Law.

100.      In accordance with Fair Workweek Law, § 20-1211(b), Plaintiff and the Proposed Sub-Class for these violations is entitled to compensatory damages to make the employee whole in an amount no less than $100 per violation, injunctive and declaratory relief, and prevailing party attorneys' fees and expenses.

### FOURTH CAUSE OF ACTION

***Violations of New York City Fair Workweek Law-Failure to Pay Schedule Change Premiums***

101.      Pursuant to the Fair Workweek Law, no later than when a new fast food employee

receives such employee's first work schedule, a fast food employer shall provide such employee with a written copy of their regular schedule including the number of hours a fast food employee can expect to work per week for the duration of the employee's employment and the expected days, times and locations of those hours.

102.    Pursuant to the Fair Workweek Law, a fast food employer shall provide a fast food employee with written notice of a work schedule containing regular shifts and on-call shifts on or before the employee's first day of work. For all subsequent work schedules, the fast food employer shall provide such notice no later than 14 days before the first day of any new schedule. Such work schedule shall span a period of no less than seven days and contain all anticipated regular shifts and on-call shifts that the employee will work or will be required to be available to work during the work schedule.

103.    Where a regular schedule is not provided 14 days in advance, and schedules are provided on shorter notice, and where changes to such schedules are made, the Fair Workweek Law considers those violations and has a schedule to assess civil penalties owed and payable to Plaintiff.   § 20-1222.

104.    In accordance with Fair Workweek Law, § 20-1211(b), Plaintiff and the Proposed Sub-Class for these violations is entitled to all civil penalties, plus compensatory damages to make the employee whole in an amount no less than $100 per violation, injunctive and declaratory relief, and prevailing party attorneys' fees and expenses.

### FIFTH CAUSE OF ACTION

**New York Labor Law – Failure to Pay Timely Wages**
**(Brought on behalf of Plaintiff and Proposed Class)**

105.    The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendant and protect Plaintiff and the Proposed Class.

106. Defendant failed to pay Plaintiff and Proposed Class on a timely basis as required by NYLL § 191(1)(a), which resulted in an underpayment.

107. Manual Workers, as contemplated by NYLL § 191, are "dependent upon their wages for sustenance." *People v. Vetri*, 309 N.Y. 401, 405 (1955).

108. All of Defendant's non-exempt employees are Manual Workers as that term is used in Section 190(4) of the New York Labor Law.

109. As such, the failure to provide wages owed to Plaintiff and all others similarly situated Manual Workers, according to NYLL § 191, constitutes an "especially acute injury." *See Caul v. Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Associates. Contr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019)).

110. Defendant's conduct also constitutes an "injury in fact" suffered by Plaintiff under Article III that is within the federal judicial power because Plaintiffs have "suffered an injury in fact that is concrete, particularized, and actual or imminent." *See Caul v. Petco* (infra).

111. Due to Defendant's violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendant compensatory damages in an amount to be determined in this action, plus the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## SIXTH CAUSE OF ACTION

### Failure to Provide Wage Notice Per NYLL 195

112. Plaintiff alleges and incorporates each and every allegation contained in paragraphs above with the same force and effect as if fully set forth at length herein.

113.    At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the New York Labor law, §§ 190 et seq., including §§ 191, 193, 195 and 198 and the applicable regulations thereunder, including as manual workers who should have been paid all overtime and non-overtime wages no later than weekly.

114.    Specifically, NYLL 195(1) requires the employer provide a notice containing "the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article" and Defendant failed to do so here.

115.    At all times relevant herein, Defendants failed and willfully failed to provide Plaintiff with the notice(s) required by NYLL § 195(1) – Plaintiff is therefore entitled to and seek to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL § 198 including NYLL § 198(1-b), as well as an injunction directing Defendant to comply with NYLL § 195(1).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similar persons, respectfully requests that this Court grant the following relief:

A.  Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure

B.  Designation of Plaintiff as representative of the New York Rule 23 Class and counsel of record as Class Counsel;

C.  Damages for Unpaid Wages in an amount to be determined at trial;

D.  Compensatory damages in an amount to be determined at trial;

E.  Liquidated damages to the extent permitted by law pursuant to the NYLL;

F.  Prejudgment and post-judgment interest;

G.  Reasonable attorneys' fees and costs of the action;

H.  All other damages and relief authorized by statute or law and permitted herein, including but not limited to punitive or liquidated damages, costs and attorney fees, and prejudgment interest.

I.  Injunctive and Declaratory Relief;

J.  Such other relief as this Court shall deem just and proper.

## **JURY DEMAND**

Pursuant to FRCP 38 Plaintiff demands trial by jury on all issues.


Dated: New York, New York
        December 8, 2023

**LAW OFFICE OF MOHAMMED GANGAT**

By: _____
    Mohammed Gangat, Esq.
    675 Third Avenue, Suite 1810,
    New York, NY 10017
    (718) 669-0714
    mgangat@gangatllc.com

    *Attorneys for Plaintiff and
    Proposed Class*